[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff wife commenced this action for a CT Page 4136 dissolution of marriage on the ground of irretrievable breakdown. She also sought custody and support of the parties' two minor children, a fair and equitable property settlement, and other relief as on file. The defendant filed no answer or cross complaint. At trial, the parties and the husband's accountant and bookkeeper testified. Each spouse submitted financial affidavits and written proposed orders and claims for relief. Child support guidelines worksheets were also submitted; numerous documentary materials were introduced into evidence. There were also posttrial submissions.
From the evidence, I find as follows.
The parties were married March 28, 1979, in Lyme, Connecticut. The wife's birth name is Hartshorn. She has resided in Connecticut continuously for a year immediately before the date of the complaint, September 27, 1993. The parties have two minor children, issue of the marriage, Jared Bombaci, born November 18, 1982, and Eric Bombaci, born November 28, 1987. No other minor children were born to the wife since the date of the marriage. All statutory stays have expired and the court has jurisdiction.
The plaintiff wife is 41 years of age, in good health, and a high school graduate with some college. She studied interior design. She worked in the husband's business and managed the books and other duties for about 16 years, until 1993, when she left and worked for a furniture store for a brief period. She now is a self-employed house painter and earns $400 per week gross, $315 per week net.
The defendant husband is 50 years of age, complains of back problems and arthritis, and takes aspirin, but no prescribed medication. He has worked throughout the marriage in construction, mostly marine related. He is the sole stockholder of a close corporation which operates the construction end of his business affairs. He also owns and operates a marina business.
The parties separated in June, 1994. The wife continues to reside in the house with the minor children. The major factors in the breakdown of the marriage were the husband's resumption of heavy drinking and periodic episodes of violence toward the wife. It is evident that the marriage has irretrievably broken down. CT Page 4137
Commendably, the parties entered into a written `partial marital settlement agreement' (Agreement), providing for joint legal custody of their minor children and physical custody with the wife, provisions for health and life insurance, child support, apportionment of health related expenses for the children and dependency exemptions for income tax purposes.
I find that the Agreement was entered into knowingly, understandingly and voluntarily and approve the Agreement, with the exception of the child support order, as I find that the child support guidelines should be deviated from.
The husband reports $769 per week as gross income from all sources. Despite the testimony of an accountant, his bookkeeper, and the filing of corporate financial statements and tax returns, the picture of his income and earnings is clouded. The corporation's annual report for the fiscal years ending August 31, 1994 and 1995, reports commissions to the officer (the defendant) in 1995 of $125,000. There is a substantial discrepancy between this income and that reported on his financial affidavit, $39,988. His financial affidavit is further belied by his annual income of $72,800 as reported on his personal financial statement, Exhibit 3.
The parties have substantial assets and have enjoyed an upper middle class lifestyle.
The husband reports in his posttrial submission, supplementing his financial affidavit, solely owned real estate as follows:
The marital dwelling, the value of which is stipulated as $650,000, less first and third mortgages of $156,465 and $82,399,[1] leaving equity of $411,136;
The Essex business property valued at $145,000, less mortgage of $134,575, leaving equity of $10,425;[2]
The Mystic Marina is valued at $625,000, less mortgage of $900,753, leaving no equity. This latter mortgage is of a blanket type, and is a second mortgage on the marital dwelling, and may also be a second mortgage on the Essex property.
The husband reports household furnishings valued at CT Page 4138 $5,000, a checking account of $200, Shawmut stock valued at $5,000, an airplane valued at $10,000, the value of his stock in his incorporated business at $30,000, and an antique automobile not originally disclosed, which he values at $7,500. Apart from the mortgages, he reports $225,000 in liabilities, the major portion of which is a business claim of $200,000. He is also in arrears on real estate taxes and mortgage payments, and his corporation is in arrears on payroll taxes, among other things.
The corporation's latest report discloses approximately $512,000 in assets after accumulated depreciation of $220,613 is added back and gross earnings in its 1995 fiscal year of $600,380. The court, while recognizing that the defendant is in some financial straits, does not credit his evaluation of his interest in the corporation at $30,000; this is especially so as the corporation's annual gross income has risen substantially from that in 1994. In this regard, I have also considered his stockholder's loan.
The wife reports a checking account valued at $12, a 1990 Jeep with equity of $5,433, a life insurance policy with cash value of $727, an antique automobile valued at $5,500, which has been disposed of, and an iceboat valued at $1,800.
Against these assets, she reports $32,369 in liabilities, the major portion of which are for credit card and charge account balances.
The husband purchased the marital dwelling in his sole name in 1983 for $179,000, in part with the proceeds of about $100,000 from the sale of a house owned by him prior to the parties' marriage. Substantial sums and efforts were put into the home by the parties to renovate it. It sits on 280 acres of land.
The husband's construction business has done well in the past and continues to appear to do well. The precarious state of the parties' finances had its genesis in the early 1980s when the husband and a partner purchased what is now the Mystic Marina. Construction and the obtaining of permits took much time and money. The buyout of his partner for $450,000 took even more. As a consequence, the husband embarked on several mortgage refinancings to keep the marina afloat. The marina has consistently taken in less than the outgo, and drains his construction company. The funds taken from the corporation CT Page 4139 and applied to the marina's operational deficits are charged to his stockholder's loan for income tax purposes, rather than treated as income to him.
As can be readily seen, the stockholder's loan, now almost $240,000, graphically describes what is in fact a hemorrhage of money from a corporation which has done well in the past and still maintains a substantial stream of revenue.
I make the following additional findings. The parties were ordered to participate in the Parenting Education Program, pursuant to General Statutes § 46b-69b; they have yet to do so.
The wife removed substantial funds from the husband's corporation before she left its employment. She justified this as merely taking what was her due, her accrued unpaid salary of $1,000 per week. This claim is not justified, as the record indicates the wife did not consistently declare or draw $1,000 per week in income. The husband claims that the wife's withdrawal of these funds severely jeopardized the financial condition of the business and hampered his ability to obtain performance bonding, thereby in turn, impairing the business' ability to bid on jobs. I find this claim exaggerated, especially since the gross revenues of the business have risen since the wife took the funds and left the business.
The guideline worksheets submitted by the parties dispute the amount of the defendant's child support obligation. The father argues that his presumptive obligation should be $232.50 per week for the two children, the mother argues for $428 per week, claiming that his income is $2,000 gross, $1,565 per week net. If the mother's earnings estimate were accepted, the total net disposable income of the parties would be $1,880 per week, which is greater than $1,750 per week. Therefore, the guidelines must be deviated from on this ground alone.
I conclude that it is appropriate for the children to remain in the marital dwelling with the mother to provide the children with some stability. At the same time, because of the mortgage transactions the husband has entered into, it is difficult at this time to unscramble the parties' marital assets. To enable the mother and children to remain in the family home, at least for the time being, which the defendant himself suggests, I deem it fitting to order the husband to pay the mortgage payments, real estate taxes and homeowner's CT Page 4140 insurance on the property. This appears to be substantially in excess of what the guidelines would suggest, even at a combined disposable net income of $1,750 per week, and would provide no lesser economic benefit to the children. I conclude that a strict application of the guidelines would be inequitable or inappropriate in this case.
The husband has superior earnings and earning capacity than the wife, and thus has a greater opportunity than she has to acquire capital assets and income in the future.
The husband has made greater monetary contributions to the marital assets than the wife has; his financial management, or lack thereof, has affected the parties' financial situation negatively.
The wife has been the primary homemaker and child care giver during the marriage, and thus has made greater nonmonetary contributions to the marriage than he has. Despite the parties' separation and decline in the family fortunes, the wife has not curbed her spending; she reports $47 per week in dog food and $76 per week in clothing, among other things, and has run up significant charge account balances. He, too, has not made sufficient effort to reorganize his financial affairs, including for example, selling the marina, the plane, or various antique vehicles. In short, the parties have been living beyond their apparent means.
I have considered all of the statutory factors in General Statutes §§ 46b-81, 46b-82 and 46b-84, in the light of the evidence and my findings. I have also considered the taxable implications and consequences of the financial orders set forth below, and the Agreement entered into by the parties.
Accordingly, judgment may enter dissolving the marriage on the ground of irretrievable breakdown. The following orders shall also enter.
(1) Joint legal custody of the minor children is awarded to the parents, primary physical custody to the mother, with liberal rights of access to the father. Paragraphs 3, 5A, 5B and 6 of the Agreement are incorporated into the decree by reference.
(2) The wife shall be entitled to reside in the CT Page 4141 marital dwelling, 131 Salem Road, Lyme, Connecticut, with the children, for a period of five years from the date hereof, or until she remarries or cohabits with another person, whichever shall first occur. In lieu of child support, the husband shall continue to pay the first and third mortgage payments, real estate taxes and homeowner's coverage for the said period, and keep said obligations current. The wife shall have exclusive use of the premises, however, she shall vacate the same within thirty (30) days of her remarriage or cohabitation. She shall be responsible for routine maintenance and upkeep and any repairs which cost $200 or less. The husband shall be responsible for major repairs, those greater than $200.
(3) The husband shall pay to the wife the sum of $100 per week alimony, which shall terminate upon the death of either party, her remarriage or cohabitation.
(4) The husband shall take and have the following real and personal property: 13 Salem Road, Lyme, Connecticut; the Mystic Marina and all equipment and personal property thereon; the business property in Essex, Connecticut; his airplane; his Essex antique automobile; all the common stock of Bombaci Contractors, Inc.; the Ford tractor; the print `take no chances;' the bulldozer and site truck; company machine parts and materials at the Salem Road premises; the photos of Jared in costume and those taken by Ed's artist friend; his bicycle; the `clamshell' scene of a deer; and his hunting trophies.
(5) With respect to all of the art work, each shall choose one item in turn, until all are distributed, with the husband choosing first.
(6) The wife shall take and have the following items: her 1990 Jeep; the household furnishings and furniture in the Salem Road home; the computer; her checking account; the Shawmut stock; her $100,000 life insurance policy, excepting that the minor children shall be designated thereon as equal irrevocable beneficiaries until each reaches age 18; the iceboat, and the riding lawnmower.
(7) The husband shall execute and deliver to the wife a note and mortgage in the amount of $100,000 on all three parcels of real estate. Said note and mortgage shall be payable with interest at the rate of 5 percent per annum, on or before five (5) years from the date hereof. Said note and mortgage CT Page 4142 shall provide: for default if the principal and accrued interest is not paid within thirty (30) days after becoming due and payable; that interest shall commence to accrue at the rate of 10 percent per annum if in default; for reasonable attorney's fees and costs of collection, and that the wife shall be named as mortgagee/loss payee on all applicable insurance. Said note shall also provide that the wife may declare the unpaid balance ; and accrued interest immediately due and payable in the event a foreclosure proceeding is commenced on any parcel by any senior mortgage or lien holder. The husband shall be entitled to a partial release of mortgage for the marina and/or the Essex business property upon the payment to the wife of one half the net proceeds of any bona fide sale or refinance, which is to be applied to the balance of her mortgage. If there are no net proceeds, but such sale or refinance has the effect of removing the blanket mortgage on the Salem Road premises, the husband shall be entitled to such partial release for no consideration. The failure to pay said wife's mortgage shall be deemed a substantial change of circumstances within the meaning of § 46b-86 (a).
(8) The husband shall designate the wife as irrevocable beneficiary of $150,000 of his $500,000 life insurance policy so long as he is obligated to pay alimony or the mortgage obligation imposed upon him by paragraph 7 hereof.
(9) The pendente lite order that the parents participate in the Parenting Education Program pursuant to § 46b-69b is reaffirmed. No proceeding may be commenced by either party which would have the effect of modifying the custodial placement of visitation orders unless the movant has successfully completed the program.
(10) Each party shall be entitled to claim one child as a dependency exemption for income tax purposes. When only one child is so claimable, the parties shall alternate such claim in succeeding years.
(11) Each spouse shall pay his or her own counsel fees and the debts shown on their respective financial affidavits, except as specifically set forth herein.
(12) All documents necessary or incidental to the effectuation of these orders shall be completed and exchanged, together with the transfer of any personal property, within CT Page 4143 thirty (30) days hereof.
Teller, J.